

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| RICHARD WALKER, § | |
| Plaintiff, § | |
| § | |
| vs. § | CIVIL ACTION NO. 6:04-0034-26 |
| § | |
| METROPOLITAN LIFE INSURANCE § | |
| COMPANY, § | |
| Defendant. § | |

**ORDER REVERSING DEFENDANT'S DENIAL OF LONG-TERM DISABILITY BENEFITS**

**I.     INTRODUCTION**

This matter is before the Court for review of Defendant's decision to terminate Plaintiff's long-term disability (LTD) benefits under a LTD plan governed by ERISA.[1] In their Joint Stipulation, filed June 23, 2003, the parties agreed that the Court could dispose of the matter based upon the joint stipulation and cross-memoranda in support of judgment.[2] For the reasons set forth below, the Court finds that Defendant abused its discretion in denying LTD benefits.

---

[1] Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001-1461.

[2] On June 2, 2004, Plaintiff filed a motion for summary judgment. However, after realizing that a specialized case management order had been issued in the case, Plaintiff withdrew its motion and both parties filed cross-memoranda in support of judgment.

**II.     FACTUAL AND PROCEDURAL HISTORY**

*A.     The parties*

Plaintiff is a 53-year-old married male who resides in Travelers Rest, South Carolina. Until January of 2003, Plaintiff was employed by Fluor Daniel Corporation as a designer.

Defendant Metropolitan Life Insurance Company (Defendant or MetLife) insures the LTD plan provided by Fluor Daniel Corporation. Defendant is also the claims administrator for the plan.

*B.     The plan*

The LTD plan provides, in relevant part, the following definitions:

**Definition of Disability**

"Disabled" or "Disability" means that, due to sickness, pregnancy or accidental injury, you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis; and

1. during your Elimination Period and the next 24 month period, you are unable to earn more than 80% of your Predisability Earnings or Indexed Predisability Earnings at your Own Occupation for any employer in the Local Economy; or

2. after the 24 months period, you are unable to earn more than 80% of your Indexed Predisability Earnings from any employer in your Local Economy at any gainful occupation for which you are reasonably qualified taking into account your training, education, experience and Predisability Earnings.

Your loss of earnings must be a direct result of your sickness, pregnancy or accidental injury. Economic factors such as, but not limited to, recession, job obsolescence, paycuts and job-sharing will not be considered in determining whether you meet the loss of earnings test.

For an employee whose occupation requires a license, "loss of license" for any reason, does not, in itself, constitute Disability.

"Appropriate Care and Treatment" means medical care and treatment that meet all of the following:

1. it is received from a Doctor whose medical training and clinical experience are suitable for treating your Disability;

2. it is necessary to meet your basic health needs and is of demonstrable medical value;

3. it is consistent in type, frequency and duration of treatment with relevant guidelines of national, medical, research and health care coverage organizations and governmental agencies;

4. it is consistent with the diagnosis of your condition; and

5. its purpose is maximizing your medical improvement.

"Doctor" means a person who: (i) is legally licensed to practice medicine; and (ii) is not related to you. A licensed medical practitioner will be considered a Doctor:

1. if appropriate state law requires that such practitioners be recognized for the purposes of certification of disability; and

2. the care and treatment provided by the practitioner is within the scope of her license.

"Own Occupation" means the activity that you regularly perform and that serves as your source of income. It is not limited to the specific position you held with your Employer. It may be a similar activity that could be performed with your Employer or any other employer.

"Local Economy" means the geographic area surrounding your place of residence which offers reasonable employment opportunities. It is an area within which it would not be unreasonable for you to travel to secure employment. If you move from the place you resided on the date you became Disabled, we may look at both that former place of residence and your current place of residence to determine local economy.

(A.R. 121-22.)

    C.    *Claims, denials, and appeals*

Early in January of 2003, Plaintiff submitted a claim for short term disability (STD) benefits, which was approved shortly thereafter. According to Plaintiff's claim, the disability arose from

chronic obstructive pulmonary disease (COPD). Plaintiff reached maximum benefits under the STD plan on July 18, 2003, at which time his claim was converted to a LTD claim. (A.R. 983.)

On July 11, 2003, Defendant contacted Plaintiff and requested that he provide additional information regarding the LTD claim within thirty days. (A.R. 948.) Before Defendant received the additional information it had requested, by letter dated July 31, 2003, it informed Plaintiff that it had approved continued LTD benefits on the diagnosis of depression through August 7, 2003, but had denied benefits based upon COPD. (A.R. 916-19.) In the letter, Defendant explained its reasoning behind denying benefits for COPD:

> Your physician states that you are unable to work at your current employer due [to] complications associated with Chronic Obstruction Pulmonary Disease. The inability to work at the current employer does not prevent the ability to work for a different employer performing the same job. Based on the medical information submitted you have not met the required definition of disability, therefore making you ineligible for Long Term Disability benefits resulting from the physical diagnoses. And this portion of your claim has been denied.

(A.R. 917.)

Records submitted to Defendant prior to Plaintiff's claim being converted to an LTD claim include a statement from Plaintiff's pulmonologist, Dr. Fady F. Nassif, in which Dr. Nassif indicates that Plaintiff suffers from "1) Chronic obstructive pulmonary disease with improvement of the obstructive defect compared to previous studies in a patient with possible asthma, 2) shortness of breath, which is improving, and 3) chronic cough, resolved." (A.R. 654.) Additional records from Dr. Nassif indicate that Plaintiff's pulmonary problems are moderate to severe. (A.R. 700.)

Defendant also received records from Dr. Bryan Worthington, in which the doctor requested that Plaintiff undergo a functional capacity evaluation (FCE). The evaluator of the FCE indicated that Plaintiff was limited, among other things, to walking or standing less than ten minutes at a time

4

and driving less than one hour at a time. (A.R. 735.)

In response to Defendant's request for additional materials after his claim converted to an LTD claim, Plaintiff submitted Attending Physician Statements from Gregory Bentzel, Podiatrist; Dr. W.M. Greene, ENT; Dr. Fary Nassif, pulmonologist; and Dr. Bryan Worthington, Internal Medicine. (A.R. 811-29.) Those statements indicate that Plaintiff suffers or has suffered from 1) pain, swelling, and difficulty walking as a result of plantar fascitis and a calcaneal spur in the left foot; 2) headaches, nasal congestion, and nasal obstruction as a result of chronic sinusitis; 3) COPD, occupational asthma, and shortness of breath; and 4) cervical neck and lower back pain. (A.R. 811-29.) Both Drs. Nassif and Worthington indicated that Plaintiff should not return to work because he gets shortness of breath easily and has cervical neck and lower back pain. (A.R. 820, 824.)

In the medical records submitted by Plaintiff, Dr. Nassif notes that Plaintiff's asthma is exacerbated by his work environment and that he needs to avoid that particular work space. (A.R. 849.)

Records submitted by Dr. S.R. Littlepage, II, neurologist, indicate that Plaintiff has a ruptured disk at C3-C4. (A.R. 861.) According to Dr. Littlepage, Plaintiff indicated in 2000 that the discomfort associated with his ruptured disk "is not that bad." (A.R. 861.)

Dr. Michael Tollison, Orthopaedic Surgeon, saw Plaintiff in 1999 and noted that Plaintiff had pes cavus, bilateral 2 through 5 claw toes, bilateral transverse tarsal and first TMT joint arthritis, and bilateral ankle stability. (A.R. 878.) Dr. Tollison opined that surgery could actually increase Plaintiff's pain. (A.R. 878.) Plaintiff agreed at that time to wear lace up ankle braces for regular activities and for walking on unlevel surfaces. (A.R. 878.)

Plaintiff also submitted to Defendant the job description of a principal designer as prepared by Plaintiff's employer. (A.R. 892.) While the description includes a number of cognitively demanding responsibilities, it does not describe any physical demands of the job except that Plaintiff was required to "assist . . . on field inspections." (A.R. 892.) A list of Plaintiffs' medication, both prescription and non-prescription, was also included. (A.R. 875.)[3]

Defendant submitted all of the materials received from Plaintiff to Dr. Gary Greenwood, Board Certified Specialist in Internal Medicine and Infectious Diseases, for an independent medical review.[4] In his report, Dr. Greenwood opined that the medical information he reviewed did not support a functional impairment sufficiently severe to preclude work in Plaintiff's own occupation for any employer. (A.R. 4.) Dr. Greenwood stated, "While COPD and occupational asthma are mentioned in the file, there is no substantiation of either."

On September 8, 2003, Defendant issued its initial denial letter in which it concluded, "the objective medical records currently on file no longer substantiate a functional impairment severe enough to prevent the performance of your Own Occupation for any employer in your Local Economy." (A.R. 162.) Defendant terminated payment of benefits effective September 8, 2003.

Thereafter, Plaintiff appealed the denial and submitted to Defendant additional materials to be considered on appeal. Those materials included an affidavit of Plaintiff, a statement of Dr. Tollison, a letter from Brett Joyce, additional medical records, and an affidavit of Dr. Nassif. (A.R.

---

[3]Plaintiff also provided to Defendant numerous medical records of his psychiatrist and therapist. Because Plaintiff concedes that "the psychiatric component of his problems" is no longer relevant to his disability claim, the Court omits a discussion of those records.

[4]Dr. Bettina B. Kilburn, Psychiatrist, also reviewed Plaintiff's file. However, as noted above, her findings are no longer relevant to Plaintiff's claim.

253-586, 588-643, 644-644F.)

In his affidavit, Plaintiff described the physical demands of his job as a principal designer:

> My job was very cognitively demanding and it was also physically demanding as it required that I visit job sites, be able to walk over rough terrain, and be exposed to extreme temperatures on a regular basis. I was also exposed to dust, dirt, and chemicals on the job sites. I was also required to walk up and down four (4) story platforms and stairs at boiler facilities on a regular basis and I was frequently required to climb stairs.

(A.R. 254A.) Plaintiff also stated that his prescription medications cause fatigue and cognitive difficulty. (A.R. 254B.)

In the letter from Dr. Tollison, he discussed possible fusion options for Plaintiff's foot pain. Dr Tollison continued by stating,

> [u]nfortunately despite the above mentioned operations, [Plaintiff] will always have chronic pain in his feet secondary to multiple joint involvement. Any patient with multiple joint involvement is not a candidate for standing and walking work, and with the discs in his neck and back, I would imagine he would have a difficult time with any type of sitting work. . . . Regarding the walking job, he is certainly not able to perform any of these responsibilities as outlined [by Plaintiff]. Unlevel surfaces are not allowed especially climbing four stories at the boiler facilities. . . . I agree that [Plaintiff] is not able to earn 80% of his predisability income secondary to the fact that he cannot perform his standing and walking job. . . . If you can have the other doctors verify that [Plaintiff] cannot perform a sitting job then he, in essence, would be completely and totally disabled.

(A.R. 255-56.)

The affidavit of Dr. Nassif provides,

> [Plaintiff] suffers from a number of medical problems including, COPD . . . occupational asthma, sleep apnea, depression, bulging discs in his cervical region, deteriorating discs in lumbar area, congenital spine defect in lower back, arthritis and birth defects of both feet, arthritis and deteriorating cartilage in both knees, problems with both hands, and left wrist, arthritis in left shoulder, arthritis and tendonitis in both elbows, hypertension and high cholesterol. Subjectively, [Plaintiff] complains of constant pain and discomfort as well as wheezing, difficulty ambulating, and sleep problems. He suffers significant and constant fatigue and he has difficulty focusing

7

>for any extended period of time as a result of his problems. [Plaintiff] has willingly undergone all treatments which I have prescribed for him and I have no indication that he is malingering or exaggerating his symptoms in any way. His subjective complaints are completely consistent with his objectively diagnosed medical problems.

(A.R. 644B.) Dr. Nassif also included in his affidavit a list of the medications taken by Plaintiff and the possible side effects of each. (A.R. 644B-644E.) In conclusion, Dr. Nassif opined that "based upon [Plaintiff's] cumulative medical problems, his subjective symptoms, and the side effects of his prescription medications, . . . he is and has been completely and totally disabled from performing his occupation since he ceased actively working consistent with [the plan's] definition of disability." (A.R. 644F.)

Medical records of Dr. James E. Jennings, Jr., Orthopaedic Surgeon, indicate Dr. Jennings' diagnosis of moderate osteoarthritis of both knees. (A.R. 345.) Dr. Jennings noted that he "fully expect[s] this condition to worsen," and "[i]t is not likely that [Plaintiff] will ever be able to return to the work that he is currently doing . . . ." (A.R. 345.)

Defendant sent all of the additional materials received from Plaintiff to Dr. R. Kevin Smith, Board Certified Preventive Medicine Occupational Medicine, for an Independent Medical Review.[5] In his report, Dr. Smith made several findings regarding Plaintiff's medical records and diagnoses. He stated that the records were "consistent with COPD, asthma, and obstructive sleep apnea," although he indicated that the sleep apnea does not affect his work abilities. (A.R. 783.) Dr. Smith further stated that Plaintiff "does have a mild to moderate impairment as it relates to COPD and

---

[5] The records were also submitted for review to Dr. Lee H. Becker, Board Certified Psychiatrist.

asthma and might need restrictions and limitations to a light work demand level and would need to avoid a dirty environment or exposure to excessive gas fumes, etc." (A.R. 783.)

Dr. Smith noted that Plaintiff "has congenital abnormalities of his feet," which results in "chronic bilateral foot pain." (A.R. 784.) He also noted the recommendation of Dr. Jennings that Plaintiff not return to the job he was currently doing because of degenerative arthritis in both knees. (A.R. 784.)

Dr. Smith indicated that Plaintiff's records showed at least mild to moderate impairments in his feet and knees that necessitate restricted standing and walking and restrictions against excessive climbing and heavy lifting. (A.R. 785.) Dr. Smith also stated that Plaintiff's job description outlined his responsibilities as a mechanical/equipment engineer but did not describe any physical requirements of the job. (A.R. 785.)

Dr. Smith stated that Plaintiff's medical records indeed supported restrictions and limitations based upon his physical condition:

> the employee does have mild to moderate impairment as it relates to his COPD and asthma condition. This has decreased his exercise tolerance to 3.9 METS. Because of his respiratory conditions, he would require restrictions and limitations within a light work capacity level and would need to avoid exposures to excessive dust fumes, gases, chemicals, etc. Due to moderate arthritis in both knees and both feet, he would also require restrictions and limitations to within a light lifting capacity of not exceeding more [than] twenty pounds of lifting.
>
> He would also need to limit standing and walking to approximately 2 hours out of an 8-hour shift and would be limited to occasional climbing of ladders and stairs. Records also indicate that he has cervical spondylosis and disc disease, which would necessitate restrictions and limitations within a light work demand level and similar to those outlined above.

(A.R. 785-86.)

9

By letter dated January 9, 2004, Defendant stated,

> [r]eview of the information that has been submitted on appeal, along with the information on record, does not support the existence of a totally disabling condition severe enough to keep Mr. Walker from performing the essential duties of his own occupation for which he is reasonably fitted by training, education or experience on a full time basis. Therefore, we find that the original claim determination was appropriate and benefit will remain denied.

(A.R. 649.)  This appeal followed.

### III.    STANDARD OF REVIEW

In reviewing denials of benefits by ERISA-governed plans, courts generally apply a *de novo* review.  If, however, the documents governing the plan grant the plan or the claims administrator discretion to interpret or apply the plan's terms, as in the instant case, the Court will review the decision for an abuse of discretion.  "[I]f the plan administrator's decision falls within the scope of the administrator's contractually conferred discretion, the court may review the merits of an administrator's decision only for an abuse of discretion." *Haley v. Paul Revere Life Ins.*, 77 F.3d 84, 89 (4th Cir. 1996).

When reviewing a plan administrator's decision for abuse of discretion, the Court may consider only evidence before the plan administrator at the time of the decision. *Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994).  The administrator's decision must stand unless unreasonable, even if the Court would have reached a different conclusion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989); *Booth v. Wal-Mart Stores Inc. Assoc. Health and Welfare Plan*, 201 F.3d 335, 341 (4th Cir. 2000).  In other words, the Court may reverse a denial of benefits only if the decision is unsupported by "substantial evidence" or "deliberate, principled reasoning." *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995).

Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion . . . [and] consists of more than a mere scintilla . . . but may be somewhat less than a preponderance." *LeFebre v. Westinghouse Elec. Corp.*, 747 F.2d 197, 208 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1996). The Court's role is to determine only whether the decision was made rationally and in good faith–not whether it was right. *See, e.g., Griffis v. Delta Family-Care Disability*, 722 F.2d 822, 825 (11th Cir. 1984).

The Fourth Circuit has identified numerous factors that may be considered in the "abuse of discretion" analysis. One such factor is whether the plan administrator has a conflict of interest. *See Booth*, 201 F.3d at 342-43. In this regard, when a conflict of interest exists, arising out of the fact that the plan administrator is also the plan insurer, as here, a court must "review the merits of the interpretation to determine whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries." *Id.* (citing *Bedrick v. Travelers Ins. Co.*, 93 F.3d 149, 152 (4th Cir. 1996)). Thus, although the plan administrator's decision is still reviewed for an abuse of discretion in these circumstances, "this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict." *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 233 (4th Cir. 1997).

Both parties agree that the plan documents confer upon Defendant the discretionary authority to construe the terms of the plan and determine eligibility for benefits and that the appropriate standard of review is abuse of discretion. However, because Defendant acts as both plan administrator and plan insurer, Defendant suffers from a conflict of interest. As such, a sort of "sliding scale" of additional scrutiny should be applied to Defendant's decision to deny LTD benefits. *Id.* "The more incentive for the administrator or fiduciary to benefit itself by a certain

interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it." *Id.*

## IV.   DISCUSSION

### A.   *Side Effects of Medication*

With this modified abuse of discretion standard in mind, the Court will address Plaintiff's contentions as to why he believes Defendant's denial of benefits should be overturned. Plaintiff first asserts that Dr. Smith and Defendant's failure to consider the side effects of his medications is itself an abuse of discretion. The Court is unconvinced that Defendant failed to consider any side effects Plaintiff may have suffered. Defendant merely chose not to rely on that particular evidence.

Plaintiff cites *Bridges v. Provident Life and Accident Insurance Company*, No. 7:04-209-13 (D.S.C. July 20, 2004), for his contention Defendant failed to consider his side effects. However, the facts in *Bridges* are distinguishable from those in the present case. The court in *Bridges* noted that "the medical records which are a part of the administrative record are replete with references to Bridges' ever changing prescription medication regimen and dosages during the several months preceding [the onset of disability] and the side effects she suffered from the medications." *Id*. at 4. The medical records indicate that, during the time that Plaintiff's doctors were altering her prescriptions and dosages in an attempt to reduce the negative side effects, Plaintiff complained of "sedation," "difficulty driving a vehicle," "trouble sleeping," "headache," "nausea," "diarrhea," "dizzy episodes," and "falling." *Id*. at 5-6.

In the present case, any references in Plaintiff's medical records regarding the side effects of his medication are minimal at best. The majority of the information in the record regarding this

alleged problem is in Plaintiff's affidavit and Dr. Nassif's affidavit. Although Dr. Nassif provides a long list of possible side effects for each of the medications prescribed to Plaintiff, he fails to indicate which side effects, if any, are suffered by Plaintiff.

"[I]t [is] reasonable for [the plan administrator] in the exercise of its discretion to give more weight to objective findings than to determinations based on subjective complaints." *Robinson v. Phoenix Home Life Mutual Ins. Co.*, 7 F.Supp.2d 623, 633 (D.Md. 1998). The medical records in this case lack not only objective findings but also subjective complaints of the purported side effects. Therefore, the Court rejects Plaintiff's argument that Defendant abused its discretion by failing to consider the side effects of his prescription medication.

### B.     *Physical Demands of Occupation*

Plaintiff next submits that "if one looked *only* at the physical demands of Plaintiff's jobs and compared the same to Dr. Smith's opinion that it would be apparent that the Plaintiff is disabled from performing his own occupation." Pl.'s Mem. in Support of Judgment at 30. Defendant claims that it was unnecessary for it to consider the physical demands alleged by Plaintiff to be a part of his job description because those demands were not listed in the description drafted by Plaintiff's employer. This Court finds Defendant's refusal to consider the physical demands of Plaintiff's job to be unreasonable and, thus, an abuse of discretion.

The job description for a "Principal Designer – Mechanical," as apparently drafted by Plaintiff's employer, provides the following expectations and standards:

> 1. Assumes responsibility for the preparation of the more difficult working drawings and necessary technical data required to produce finished design drawings and specifications.
> 2. Performs special studies to determine feasibility and optimization of design.
> 3. Selects and specifies material and equipment required to complete the task.

> 4. Performs the more complex calculations to accomplish the task in conformance with standard codes, practices, or procedures.
> 5. Checks and approves shop drawings or other vendor data and reviews with others in the working group.
> 6. Assists, as required, on field inspections and replies to questions that arise during construction.
> 7. Directs, as required, other designer and drafters in order to accomplish assigned tasks.
> 8. Assists the design supervisor in coordinating a total design effort.

(A.R. 892.) In addition to this list of the cognitive requirements of his job, Plaintiff provided in his affidavit a list of the physical demands of his job, including visiting job sites, walking over rough terrain and climbing several flights of stairs. (A.R. 254A.) Plaintiff also noted that he was exposed to dust, dirt, and chemicals at the job sites. (A.R. 254A.)

Doctors Tollison, Nasif, and Jennings all considered the physical demands of Plaintiff's occupation in rendering their opinions that Plaintiff was unable to perform his occupation. Dr. Smith, who performed the Independent Medical Review for Defendant, also took into consideration the physical demands of Plaintiff's job and opined that Plaintiff should avoid exposures to excessive dust, fumes, gases, and chemicals, be limited to standing less than two hours in an eight-hour shift, and climb stairs and ladders only occasionally.

Defendant attempts to avoid the opinions of these doctors by ignoring the physical aspects of Plaintiff's occupation and relying only on the job description provided by Plaintiff's employer. However, the job description drafted by Plaintiff's employer contains only the *objectives* of Plaintiff's particular occupation. It does not include the means by which an employee is to meet those objectives. For instance, it is unreasonable for Defendant to assume that Plaintiff could conduct field inspections, one of the duties listed by Plaintiff's employer, without physical exertion or exposure to dust and fumes, especially if Defendant had taken into consideration the types of

14

projects Plaintiff had undertaken, including the design of various types of plants and facilities. (A.R. 888.) By labeling Plaintiff's job as sedentary, Defendant failed to consider evidence of the physical demands of Plaintiff's occupation.

Defendant maintains that the evidence of the physical demands of Plaintiff's job is subjective and self-serving. However, to the extent that Plaintiff has an interest in "expand[ing] his job duties by adding physical requirements" (Def.'s Response to Pl.'s Mem. In Reply 3.), that interest is counter-balanced by any interest Plaintiff's employer may have to draft job descriptions to appear as sedentary as possible so that it will be difficult for employees to obtain disability benefits as a result of physical disabilities.

In light of the foregoing discussion, this Court finds it unreasonable for Defendant to disregard the physical demands of Plaintiff's occupation. Because failure to consider evidence in the record is an abuse of discretion, *Evans v. Metropolitan Life Ins. Co.*, 358 F.3d 307, 312 (4th Cir. 2004), Defendant's denial of benefits must be reversed.

### V.     CONCLUSION

After a review of the administrative record and the briefs submitted by both parties, this Court finds that Defendant's denial of LTD benefits to Plaintiff was an abuse of discretion. Accordingly, the Court concludes that Plaintiff is entitled to LTD benefits under the plan. Therefore, it is **ORDERED** that Defendant's decision to deny benefits be **REVERSED**.

Signed this 21st day of April, 2005, in Spartanburg, South Carolina.

s/ Henry F. Floyd
HENRY F. FLOYD
UNITED STATES DISTRICT JUDGE